UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAMAR CHAVEZ, Individually and as Next Friend of Minor N.C., and MELVIN COOK, Individually and as Next Friend of Minor N.C., | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:16-CV-2563-B |
| RICHARDSON INDEPENDENT SCHOOL DISTRICT, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Richardson Independent School District's (RISD) Motion to Dismiss Plaintiffs' First Amended Complaint. Doc. 16. For the reasons that follow, the Court **GRANTS** RISD's Motion.

## I.

## BACKGROUND[1]

### A.    *Factual History*

This case arises from the alleged sexual harassment of Plaintiffs Tamar Chavez and Melvin Cook's minor daughter, N.C., by four classmates at Richardson Terrace Elementary School (Richardson Terrace), a school in the Richardson Independent School District. Doc. 11, Pls.' First

---

[1]The Court draws its factual account from Plaintiffs' First Amended Complaint (Doc. 11) as well as from the parties' briefing on the Motion at hand. Any contested fact is identified as the allegation of a particular party.

Am. Compl. ¶¶ 5–7 [hereinafter FAC]. Plaintiffs seek to recover damages from RISD for its alleged failure to protect N.C. from that harassment. RISD, for its part, challenges the sufficiency of Plaintiffs' pleadings.

N.C. attended Richardson Terrace for third grade during the 2015–16 school year. Doc. 11, FAC ¶ 6; Doc. 16, Def.'s Mot. Dismiss 2. Aside from that basic fact and a general acquiescence that the individuals mentioned in Plaintiffs' FAC were present at Richardson Terrace around the same time as N.C., RISD disputes Plaintiffs' entire story. Doc. 16, Def.'s Mot. Dismiss 2 ("[RISD] denies the version of events set forth in Plaintiffs' Amended Complaint.").[2]

Plaintiffs maintain that N.C. suffered "relentless bullying at the hands of four male, third-grade students at Richardson Terrace" throughout the school year. Doc. 11, FAC ¶ 7. The four male students are not identified by name in the pleadings or briefing. Plaintiffs refer to them collectively as "the Bullies"; RISD calls them "John Does #1–4." *Id.*; Doc. 16, Def.'s Mot. Dismiss 2. For ease of reference, the Court refers to them collectively as "the Bullies."

In any event, Plaintiffs say that the Bullies "often tormented N.C.," calling her "ugly and stupid." Doc. 11, FAC ¶ 8. Plaintiffs aver that N.C. reported every event of harassment by the Bullies to her teachers at Richardson Terrace. Besides the ongoing bullying throughout the school year, Plaintiffs allege two specific instances of harassment by the Bullies against N.C.: (1) "The Exposure Incident"; and (2) "The Assault in the Park." *Id.* ¶¶ 8–20.

---

[2]For the most part, RISD disputes Plaintiffs' story not by offering an alternative narrative but by attacking its plausibility. The Court considers RISD's points below when addressing the sufficiency of Plaintiffs' pleadings rather than by noting each potential deficiency in the factual history.

1.    The Exposure Incident

Plaintiffs claim that in April 2016 "one of the Bullies physically exposed himself and tried to force N.C. to look at his penis." Doc. 11, FAC ¶ 8. Plaintiffs say that N.C. reported the Exposure Incident to her teacher, Ms. Brooks, who then reported it to Richardson Terrace's principal, Sharon Newman. *Id.* Newman called Plaintiff Chavez to discuss the incident, but Plaintiffs are unaware of any further action taken by Newman or other RISD employees to discipline the Bullies or protect N.C. *Id.* ¶¶ 8–9.

2.    The Assault in the Park

Plaintiffs maintain that the last day of the 2015–16 school year[3] was supposed to be "'Pajama Day,' a fun day where the students would wear pajamas to school, watch a movie, and enjoy snacks." Doc. 11, FAC ¶ 10.[4] Accordingly, Plaintiffs say, N.C. "wore her fuzzy pajamas to school and expected to stay inside." *Id.*

But the third-grade students from Richardson Terrace did not stay inside that day. Instead, their teachers took N.C. and the other third-grade students to Terrace Park, which is near the school. *Id.*; Doc. 16, Def.'s Mot. Dismiss 4. Plaintiffs claim that they were unaware of this trip to the park and never consented to it. Doc. 11, FAC ¶ 10. As a result, Plaintiffs claim, Richardson Terrace violated RISD's own internal policies, which allegedly require that teachers obtain parental consent before taking students off-campus for any reason. *Id.*

---

[3]The exact date of the last day of school is unclear. Plaintiffs say that it was June 3, 2016, while RISD says that it was June 2, 2016. Doc. 11, FAC ¶ 10; Doc. 16, Def.'s Mot. Dismiss 2. But that is a distinction without import—the alleged assault happened on the last day of the 2015–16 school year in June 2016.

[4]RISD does not mention "Pajama Day" in its briefing, so the Court is unsure if it contests whether the event was scheduled to take place that day.

Plaintiffs assert that once the students and teachers arrived at Terrace Park, N.C. and her friends began to play "directly within the view of the supervising teachers, who were seated on a bench in the park." *Id.* ¶ 11. The Bullies then approached the group and—still allegedly within the teachers' view—grabbed N.C. *Id.* Plaintiffs refer to the events that allegedly transpired over the next 15 or 20 minutes as the "Assault in the Park." *Id.*

Plaintiffs allege that while within the teachers' view, the Bullies knocked N.C. down and held her ankles and wrists. *Id.* ¶ 12. Two classmates sought to get the teachers' attention and ask for help, but the teachers purportedly ignored their request under the impression that N.C. and the Bullies were just "playing." *Id.* The Bullies then covered N.C.'s mouth and, still allegedly within the teachers' view, dragged N.C. to a park fence. *Id.* ¶ 13 (citing Doc. 1-1, Pls.' Ex. A, Newman Letter). The Bullies allegedly pushed N.C. into the fence, restrained her, whipped her back with wet sticks, and poured groundwater down her back. *Id.*

Plaintiffs claim that once the whipping stopped, the Bullies dragged N.C. to an electric generator box where they threatened to electrocute and rape her, "then leave her body in an adjacent concrete tunnel" that was "full of snakes" so "that she would never make it out alive." *Id.* ¶ 14. Next, Plaintiffs say, the Bullies dragged N.C. to a restroom in Terrace Park and attempted to force her inside, again threatening to rape her. *Id.* ¶ 15. Another male classmate allegedly intervened and ended the attack. *Id.* Plaintiffs say that Ms. Brooks—the same teacher to whom N.C. reported the Exposure Incident—then approached and the Bullies dispersed. *Id.*

Brooks allegedly questioned N.C., her friends, the Bullies, and the intervening male classmate about what had happened before gathering the students and returning to Richardson Terrace. *Id.* ¶ 16. Plaintiffs assert that Brooks then requested that the Bullies acknowledge that their actions

were "wrong." *Id.* According to Plaintiffs, neither Brooks nor RISD took any further action to address the day's events. *Id.*

When Plaintiff Chavez picked up N.C. from school that day, N.C. told her that "something bad happened." *Id.* ¶ 17. Plaintiffs say that N.C. then recounted to Chavez the details of what happened to her that day. *Id.* Chavez, in turn, went inside Richardson Terrace to speak with Ms. Brooks and the school counselor to "demand[] to know what happened and why she was not informed." *Id.* Chavez then called the Richardson Police Department. *Id.* Plaintiffs aver that an officer responded, questioned all of the teachers and students involved, and completed an incident report. *Id.* ¶ 18. Plaintiffs maintain that they were provided a copy of the report but that it was heavily redacted and contained very little detail. *Id.*

RISD says that based on Chavez's allegations and the Richardson Police Department's investigation, Principal Newman conducted her own investigation into the Assault in the Park. Doc. 16, Def.'s Mot. Dismiss 5. Newman allegedly contacted each of the Bullies and their parents and concluded that while the Bullies' actions were "inappropriate and inconsistent with school rules," they "did not intend to harm N.C." *Id.* at 5–6. Nevertheless, RISD maintains, "Newman assigned disciplinary consequences for the boys that would be implemented in August 2016—the first day for the 2016–17 school year." *Id.* at 6. RISD claims that after completing her investigation, Newman tried to call Plaintiff Chavez but could not reach her. *Id.* Thus, she mailed her a letter "communicating the results of the investigation and her intent to discipline [the Bullies]." *Id.*[5]

---

[5] Plaintiffs' FAC mentions neither Newman's investigation nor Newman's letter, which concludes that Richardson Terrace's staff acted properly under the circumstances. *See* Doc. 1-1, Pls.' Ex. A, Newman Letter. Plaintiffs do, however, attach the letter to their FAC as an exhibit and cite to it in support of their claim that the Assault in the Park happened within view of the supervising teachers. *Id.* Thus, it appears that Plaintiffs

Plaintiffs allege that the Assault in the Park left N.C. with bruises and whip marks and caused her to suffer emotional and psychological harm. Doc. 11, FAC ¶ 19. "Since the Assault in the Park, N.C. has feared for her life and safety while at school and under RISD's supervision." *Id.* And that fear, Plaintiffs claim, "has diminished N.C.'s ability to focus on her studies and gain an education to a debilitating extent," as well as required N.C. to attend counseling "to deal with the trauma resulting from the attack." *Id.* For those reasons, Plaintiffs sued RISD.

B.      *Procedural Posture*

Plaintiffs filed their original Complaint (Doc. 1) on September 7, 2016. Plaintiffs then timely filed their FAC (Doc. 11), which asserts the following causes of action against RISD: (1) violation of Title IX, 20 U.S.C. § 1681(a), individually by both Plaintiffs; (2) violation of Title IX on behalf of N.C.; and (3) punitive damages under Texas law. RISD, in turn, moved to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a plausible claim for relief, respectively. Doc. 16, Def.'s Mot. Dismiss 1. Plaintiffs responded. Doc. 20, Pls.' Resp. to Def.'s Mot. Dismiss 1; Doc. 21, Pls.' Br. Supp. Pls.' Resp. to Def.'s Mot. Dismiss [hereinafter Pls.' Resp.]. And RISD replied. Doc. 24, Def.'s Reply to Pls.' Resp. [hereinafter Def.'s Reply]. Thus, the Motion is ripe for the Court's review.

Notably, Plaintiffs' Response voluntarily dismisses their individual Title IX claims and request for punitive damages. Doc. 20, Pls.' Resp. to Def.'s Mot. Dismiss 1. The Court therefore **DISMISSES without prejudice**[6] Plaintiffs' individual Title IX and punitive damages claims, and restricts its

---

agree with some of the letter's basic factual findings but disagree with its conclusion.

[6]The Court notes that the parties disagree on whether dismissal of these claims should be with prejudice. Plaintiffs contend that dismissal should be without prejudice. RISD, for its part, argues that dismissal should be with prejudice because Plaintiffs abandoned the claims, which RISD alleges fail as a

analysis here to the Title IX claim brought on behalf of N.C.

## II.

## LEGAL STANDARDS[7]

A.    *Rule 12(b)(6)*

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare

---

matter of law because Plaintiffs lack standing to assert individual claims, and Title IX does not allow recovery of punitive damages. Doc. 20, Pls.' Resp. to Def.'s Mot. Dismiss 1; Doc. 24, Def.'s Reply 1. RISD's position is persuasive, yet the Court declines to consider it here. As addressed below, Plaintiffs will have the opportunity to amend their pleadings. If Plaintiffs include their individual Title IX and punitive damages claims, then RISD can reassert its argument that the claims fail as a matter of law. But if Plaintiffs omit the claims from their amended pleadings, then they will be dismissed with prejudice.

[7]The Court notes that the introduction to RISD's Motion to Dismiss mentions both Rules 12(b)(1) and 12(b)(6). *See* Doc. 16, Def.'s Mot. Dismiss 1 ("Defendant . . . moves to dismiss Plaintiffs' claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure."). Yet other than that first sentence, RISD never again mentions Rule 12(b)(1), which concerns the Court's subject matter jurisdiction. The Court assumes that RISD intended its reference to 12(b)(1) to correspond with its argument that N.C.'s parents lack standing to assert individual Title IX claims because nothing else in the Motion pertains to subject matter jurisdiction. But those claims were dismissed above. So the Court need not further consider them nor Rule 12(b)(1). Thus, the Court restricts its analysis to RISD's Rule 12(b)(6) challenge to N.C.'s Title IX claim.

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

B.      *Title IX*

"Title IX states: 'No person in the United States shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'" *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (emphasis added) (quoting 20 U.S.C. § 1681(a)). "This provision of Title IX may be enforced in a private lawsuit for monetary damages." *Carmichael v. Galbraith*, 574 F. App'x 286, 289 (5th Cir. 2014) (citing *Gebser v. Lago Visa Indep. Sch. Dist.*, 524 U.S. 274, 281 (1989); *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998)).

"Sexual harassment of a student by another student may be actionable discrimination for the purposes of Title IX if it is 'so severe, pervasive, and objectively offensive, and so undermines and detracts from the victim's education experience, that the victim-student is effectively denied equal access to an institution's resources and opportunities.'" *Herndon v. Coll. of Mainland*, No. G-06-0286, 2009 WL 367500, at *14 (S.D. Tex. Feb. 13, 2009) (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 651 (1999)).

## III.

## ANALYSIS

Plaintiffs' individual Title IX claims and request for punitive damages were dismissed above. So the only claim left for the Court to address is that brought on N.C.'s behalf for sexual harassment under Title IX.

> A plaintiff suing a school district for student-on-student harassment under Title IX must show that . . . "(1) [the district] had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was so severe and objectively offensive that it effectively barred the victim's access to an education opportunity or benefit, and (5) the district was deliberately indifferent to the harassment."

*Kelly v. Allen Indep. Sch. Dist.*, 602 F. App'x 949, 952 (5th Cir. 2015) (quoting *Sanches*, 647 F.3d at 165). RISD argues that N.C.'s Title IX claim should be dismissed for two reasons, namely that Plaintiffs' FAC: (1) is generally lacking in specificity as to the harassment suffered by N.C.; and (2) fails to plausibly allege the requisite five elements for a Title IX claim listed above. *See* Doc. 16, Def.'s Mot. Dismiss 2–6, 10–24. The Court considers each challenge in turn.

A.       *General Pleading Sufficiency of Plaintiffs' FAC*

While not explicitly identified as an argument for dismissal, RISD's briefing repeatedly attacks the general pleading sufficiency of Plaintiffs' FAC by asserting that Plaintiffs' harassment allegations lack specificity. *Id.* at 2–6.

For instance, RISD says that Plaintiffs' allegations about the "relentless bullying" N.C. suffered throughout the 2015–16 school year are deficient because they fail "to identify what the alleged bullying entailed, when it occurred, or where it occurred." *Id.* at 3. The same goes for Plaintiffs' claims that N.C. reported that continuous bullying to her teachers. RISD argues Plaintiffs

ought to have specified "what N.C. reported, when she reported it, [and] the identity of the 'teachers' to whom she allegedly reported" it. *Id.*

As for the "Exposure Incident," in which one of the Bullies purportedly showed his penis to N.C., RISD avers that Plaintiffs' FAC "provides no context . . . : there are no pleaded facts regarding where at the school this incident allegedly occurred, who (if anyone) witnessed this incident, why [one of the Bullies] purportedly exposed himself to N.C., or anything else the male student allegedly said or did at the time of the Exposure Incident." *Id.* Nor, RISD continues, does the FAC elucidate Plaintiffs' response to Principal Newman's call to Plaintiff Chavez about the Exposure Incident. *Id.* RISD similarly challenges Plaintiffs' allegations about the Assault in the Park, arguing, among other things, that the FAC "is silent as to the substance of what any students may have reported to Brooks" during and after the event. *Id.* at 4.

Basically, RISD argues that Plaintiffs fail to allege the who, what, when, and where of the Bullies' harassment of N.C. But as Plaintiffs note in their briefing, that position seems to misapprehend the appropriate pleading standard here. *See* Doc. 21, Pls.' Resp. 13 (internal citations omitted) ("The heightened specificity requirements that Defendant is attempting to persuade this Court to impose on Plaintiffs' pleadings tragically misconstrue the appropriate standard for stating a claim under 12(b)(6)."). "Rule 9(b) requires that the plaintiff allege . . . the who what, when, where, and how of" his or her claim. *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 384 (5th Cir. 2003) (internal quotation marks and citation omitted). Rule 8(a)(2), by contrast, requires that a plaintiff provide sufficient detail "to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Valcho v. Dall. Cty. Hosp. Dist.*, 658 F. Supp. 2d 802, 814 (N.D. Tex. 2009) (internal quotation marks and citation omitted).

Rule 8(a)(2) applies to Title IX claims. *See Carmichael*, 574 F. App'x at 288–89 (applying Rule 8(a)(2) to Title IX claim). So Plaintiffs need not allege the who, what, when, and where of their claims. Rather, they need only allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. With that in mind, the Court turns to RISD's challenge to Plaintiffs' Title IX claim brought on behalf of N.C.

B.      *Title IX Claim*

Plaintiffs' Title IX claim brought on behalf of N.C. alleges that RISD's failure to prevent the Bullies' harassment of N.C. "diminished N.C.'s ability to focus on her studies and learn at school to the extent that it effectively barred her access to an opportunity for a meaningful education." Doc. 11, FAC ¶ 26. As referenced, a school district that receives federal funds, such as RISD,[8] can be liable under Title IX where it is deliberately indifferent to known, severe student-on-student sexual harassment. *Davis*, 526 U.S. at 650. To make out such a claim, a plaintiff must show: (1) the district "had actual knowledge of the harassment"; (2) "the harasser was under the district's control"; (3) "the harassment was based on the victim's sex"; (4) "the harassment was 'so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit'"; and (5) "the district was deliberately indifferent to the harassment." *Sanches*, 647 F.3d at 165 (quoting *id.*).

RISD argues that Plaintiffs' Title IX claim brought on behalf of N.C. should be dismissed because the FAC fails to allege facts sufficient to show that: (1) RISD had actual knowledge of the harassment; (2) N.C. suffered severe and pervasive gender-based harassment that denied her access

---

[8]"RISD is a public school district and receives federal assistance." Doc. 11, FAC ¶ 22.

to educational programs or activities; and (3) RISD was deliberately indifferent to the harassment. Doc. 16, Def.'s Mot. Dismiss I. Plaintiffs bear the burden to plausibly allege all five elements of a Title IX claim. *See Twombly*, 550 U.S. at 570. The Court therefore considers each in turn and in light of RISD's arguments.[9]

### 1.    Actual Knowledge of Harassment

"For a school district to face Title IX liability, it must have had actual knowledge of harassment; constructive knowledge will not suffice." *Kelly*, 602 F. App'x at 953 (citing *Davis*, 526 U.S. at 640–43). Said differently, Title IX liability requires that "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'" *Id.* (quoting *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 658 (5th Cir. 1997)).

RISD argues that Plaintiffs' FAC fails to allege that it had actual knowledge of the Bullies' harassment of N.C. because it: (1) does not specify what N.C. reported, when she reported it, or to whom she reported it to; and (2) references general bullying and not gender-based bullying that Title IX seeks to prevent. Doc. 16, Def.'s Mot. Dismiss 18–21. RISD's second argument is better addressed below with the third factor, which considers whether the harassment at issue was based on the victim's sex. *See Sanches*, 647 F.3d at 165. Its first argument, however, deals directly with notice. So the Court considers it here.

---

[9]Elements three and four, which inquire whether a plaintiff's alleged harassment was gender-based and severe enough to prevent access to an educational opportunity, are inextricably linked here. RISD argues that the pervasive bullying was not gender-based, and any gender-based bullying was not pervasive. Thus, the Court considers them together below.

Plaintiffs contend that the FAC sufficiently alleges that RISD had actual knowledge because it sets out that N.C. reported the Bullies' consistent harassment, as well as the Exposure Incident, and because the Assault in the Park took place within the view of supervising teachers. Doc. 21, Pls.' Resp. 15–16. Among other things, Plaintiffs' FAC specifically alleges:

> 8. The Bullies often tormented N.C. and called N.C. ugly and stupid. On at least one occasion in April 2016, one of the Bullies physically exposed himself and tried to force N.C. to look at his penis ("Exposure Incident"). After N.C. reported the Exposure Incident to her teacher, Ms. Brooks, who then reported the same to the school's principal, Sharon Newman[.] Ms. Newman called Plaintiff Chavez to speak with her about what had taken place.

> 9. N.C. reported the Exposure Incident, along with every other occasion of bullying she suffered to her teachers at Richardson Terrace . . . .

> 11. . . . Directly within view of the supervising teachers, who were seated on a bench in the park, N.C. and her friends were approached by the Bullies. . . .

> 12. The assault began with the four Bullies knocking N.C. down directly within the view of the supervising teachers, each one grabbing one of her wrists and ankles. . . .

> 13. . . . The Bullies then dragged N.C. by her wrists and ankles to a park fence, still within direct view of the teachers, as confirmed by the investigation of the acting principal of Richardson Terrace.

Doc. 11, FAC ¶¶ 8–9, 11–13. RISD argues that these allegations are so vague and generic that, even taken as true, they amount to nothing more than an allegation of constructive notice, which is insufficient under Title IX. Doc. 16, Def.'s Mot. Dismiss 18–21. The Court disagrees.

First, Plaintiffs' FAC plainly alleges that N.C. reported harassment to her teachers, who then reported it to Principal Newman. Whether that harassment was based on N.C.'s sex, thereby potentially invoking Title IX's protection, is addressed below. But taken as true, Plaintiffs' FAC offers sufficient facts to plausibly allege that RISD officials had actual notice of harassment that presented

a substantial risk of serious harm. *Cf. Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trs.*, 855 F.3d 681, 689 (5th Cir. 2017) (affirming trial court's dismissal of Title IX claim for failure to sufficiently allege actual notice when complaint alleged that teachers "should have known about the assault" but failed to alleged "that a teacher or other school employee was present" and explained that victim requested that his family conceal assault from school).

Second, RISD attacks Plaintiffs' allegations about its notice of the Assault in the Park. Specifically, RISD argues that while Plaintiffs say that N.C. and the Bullies were within the teachers' view, they never allege that the teachers actually saw them or "knew what was occurring." Doc. 16, Def.'s Mot. Dismiss 20–21. Plaintiffs respond that they "are entitled to the reasonable inference that the teachers actually observed the incident when Plaintiffs have pled that it occurred directly within their field of vision." Doc. 21, Pls.' Resp. 16. RISD counters that Plaintiffs' position boils down to an allegation that the teachers *should* have known, not that they *did*. Doc. 24, Def.'s Reply 6–7. In support, RISD points to a decision from the Seventh Circuit, which states:

> Gabrielle argues that the school district had actual notice of Jason's behavior on August 31 (the first day of school), because Gabrielle testified that Jason began bothering her on the first day of school and because the teachers *constantly supervise kindergartners and thus must have noticed this behavior*. While it is certainly true that such young students are under near-constant supervision, *Davis* established that actual—not constructive—notice is the appropriate standard in peer-harassment cases. Courts, therefore, have focused on reports or observations in the record of inappropriate behavior to determine when school officials had actual notice. Nothing in the record shows that Beacon Hill school officials ever observed or that anyone reported sexual behavior by Jason towards Gabrielle (or anyone else) before October 21. Thus, there is no evidence that Defendants had notice of any harassing conduct before this date.

*Gabrielle M. v. Park Forest-Chi. Heights Sch. Dist. 163*, 315 F.3d 817, 823–24 (7th Cir. 2003) (emphasis added) (citations omitted). The Court agrees with RISD that, generally speaking, a

teacher's supervisory role over students alone is insufficient to demonstrate that the teacher observed a specific event. Concluding otherwise would, as RISD argues, amount to applying a constructive notice standard that inquires what the teacher should have known.

But Plaintiffs' FAC goes a step further, alleging not only that N.C.'s teachers held a supervisory role, but also that the events in question occurred in front of them. Taking Plaintiffs' allegations as true and drawing all reasonable inferences on their behalf, the Court concludes that the FAC plausibly alleges that N.C.'s teachers had actual notice of the Assault in the Park—if an event occurs within someone's line of sight, then it's reasonable to conclude that she saw it. Whether N.C.'s teachers *actually* witnessed the Assault in the Park is a separate, fact-intensive question better addressed at the summary judgment stage.

In sum, RISD seeks the who, what, when, and where of Plaintiffs' allegations about RISD officials' notice of N.C.'s harassment. But as addressed above, Rule 8(a)(2) does not require Plaintiffs to plead with that degree of specificity. Plaintiffs allege that: (1) N.C. reported the Bullies' harassment to her teacher, who in turn reported it to the principal; and (2) N.C. was attacked by the Bullies within sight of supervising teachers. Those allegations are sufficient to plausibly allege Title IX's actual notice requirement.

### 2.    Harasser Under the District's Control

To state a Title IX claim for student-on-student harassment, a plaintiff must plead that the harasser was under the school district's control. *Sanches*, 647 F.3d at 165. Plaintiffs allege that "the Bullies were under RISD and Richardson Terrace's control at all times relevant to this claim as all of their complained of and repeated acts of physical, emotional, and sexual violence against N.C. occurred on Richardson Terrace's campus or under the supervision of RISD and it employees." Doc.

11, FAC ¶ 24. RISD does not argue that the Bullies were beyond its control. The Court therefore concludes that Plaintiffs have sufficiently alleged the second element of a Title IX claim. *See Davis*, 526 U.S. at 646 (explaining that students are under school's control during school hours, on school grounds, when in involved in school activities, or when otherwise under the supervision of school employees).

    **3.**     <u>Harassment Based on Victim's Sex that is So Severe, Pervasive, and Objectively Offensive that it Effectively Barred the Victim's Access to an Educational Opportunity or Benefit</u>[10]

Title IX protects against "harassment based on the victim's sex" that is "'so severe, pervasive, and objectively offensive that it effectively bar[s] the victim's access to an educational opportunity or benefit.'" *Sanches*, 647 F.3d at 165 (quoting *Davis*, 526 U.S. at 650). In other words, a plaintiff must allege pervasive "gender-related harassment" to state a Title IX claim; allegations of general bullying, teasing, or name-calling will not do. *Wilson v. Beaumont Indep. Sch. Dist.*, 144 F. Supp. 2d 690, 694 (E.D. Tex. 2001).

As set forth above, Plaintiffs' FAC sets out three allegations of harassment by the Bullies: (1) continual bullying throughout the school year; (2) the Exposure Incident; and (3) the Assault in the Park. Doc. 11, FAC ¶¶ 8–20. RISD attacks Plaintiffs' allegations on two fronts. The pervasive harassment, says RISD, was not gender-related; and the gender-related harassment, was not pervasive. Doc. 16, Def.'s Mot. Dismiss 12–18. Plaintiffs retort that a year's worth of harassment by the male Bullies, coupled with the Exposure Incident and the Assault in the Park, are more than enough to meet their burden under Title IX. Doc. 21, Pls.' Resp. 18–20. The Court, at least insofar

---

[10]As referenced above (*see supra* note 9), this section addresses elements three and four of a Title IX claim. *See Sanches*, 647 F.3d at 165.

as the FAC is currently pled, agrees with RISD.

Plaintiffs allege that N.C. suffered pervasive, "relentless" harassment from the Bullies at Richardson Terrace throughout the school year. Doc. 11, FAC ¶ 7. The harassment, Plaintiffs clarify, consisted of the Bullies "torment[ing] N.C." and calling her "ugly and stupid." *Id.* ¶ 8. Those allegations, as pled, are not actionable under Title IX. Calling someone ugly and stupid is not gender-related harassment. *See Davis*, 526 U.S. at 652 ("Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender."). And without more detail into what the Bullies' alleged "torment" of N.C. consisted of, the Court cannot determine if it was based on N.C.'s sex. *See Sanches*, 647 F.3d at 165 (internal quotation marks and citation omitted) ("The offensive behavior, however, must still be based on sex, per the words of Title IX, and not merely tinged with offensive sexual connotations."). Thus, the Court finds Plaintiffs' FAC fails to adequately allege that the Bullies' continued harassment of N.C. throughout the school year, while pervasive, was based on her sex.

The Exposure Incident and Assault in the Park, by contrast, were plausibly based on N.C.'s sex. The Bullies, among other things, exposed their genitals to N.C., beat her, and threatened to rape her. *See* Doc. 11, FAC ¶¶ 8–20; *see also Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1027 (E.D. Cal. 2009) ("Although Title IX was not intended and does not function to protect students from bullying generally, the homophobic language used by the perpetrators appears to be part of a larger constellation of sexually-based conduct, which included assaulting [p]laintiff with an air hose, exposing their genitalia, and grabbing his bare buttocks in the shower.").

But those two instances alone are "not so severe, pervasive, and objectively offensive to deprive" N.C. of access to education. *Watkins v. La Marque Indep. Sch. Dist.*, 308 F. App'x 781, 784

(5th Cir. 2009) (internal quotation marks and citation omitted). Plaintiffs argue that in some instances a single incident might be so severe as to deprive one of access to education. Doc. 21, Pls.' Resp. 18–21. Plaintiffs are correct "that *Davis* suggests that a single incident could hypothetically be sufficiently severe to be a deprivation of access to education." *Watkins*, 308 F. App'x at 784. But as RISD argues in its briefing, Plaintiffs are misguided in asserting that the incidents pled rise to that level. Doc. 16, Def.'s Mot. Dismiss 16–18. The Exposure Incident and Assault in the Park are, to be sure, tragic. But cases with one-off incidents of harassment that are arguably more severe are routinely found "to fall short of the sufficient level of severity to establish a Title IX claim." *Watkins*, 308 F. App'x at 783–84; *see also Wilson*, 144 F. Supp. 2d at 694–96 (finding a single incident of forced sodomy insufficient to state a Title IX claim).

At bottom, Plaintiffs' FAC omits details about the Bullies' "relentless torment" of N.C. throughout the school year that the Court needs to determine whether N.C. suffered pervasive harassment based on her sex. Thus, "the sexual harassment alleged by [Plaintiffs] was not pervasive and the pervasive bullying alleged was not sexual harassment." *Carmichael*, 574 F. App'x at 289. For that reason, the Court concludes that Plaintiffs have failed to adequately allege the third and fourth elements of their Title IX claim. *See id.* at 289–91.

### 4. District was Deliberately Indifferent to the Harassment

Finally, to recover under Title IX, Plaintiffs must prove that RISD acted with deliberate indifference. *Sanches*, 647 F.3d at 167. A school district acts with deliberate indifference when "its response, or lack thereof, to the harassment [is] 'clearly unreasonable in light of the known circumstances.'" *Id.* (quoting *Davis*, 526 U.S. at 648). Deliberate indifference "is a high bar, and neither negligence nor mere unreasonableness is enough." *Id.* "The deliberate indifference must

'subject' the student to harassment, 'that is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it.'" *Watkins*, 308 F. App'x at 784 (citing *Davis*, 526 U.S. at 644–45).

Plaintiffs allege that RISD acted with deliberate indifference because, despite its officials' knowledge of the Bullies' ongoing harassment and the Exposure Incident, it "took no affirmative steps to protect N.C. from future harm." Doc. 11, FAC ¶ 28. As a result of that deliberate indifference, Plaintiffs say, N.C. was subjected to the Assault in the Park. *Id.* ¶¶ 26–28. RISD, for its part, argues that Plaintiffs have failed to allege that it acted with deliberate indifference because it had no knowledge of a substantial risk of harm to N.C., took remedial action in response to N.C.'s reports of bullying, and did nothing to subject N.C. to the Assault in the Park. Doc. 16, Def.'s Mot. Dismiss 21–24.

The Court addressed RISD's first challenge above and concluded that Plaintiffs have alleged enough facts to plausibly demonstrate that RISD had actual knowledge of a substantial risk of harm to N.C. Turning to RISD's other points, the Court notes that RISD need not have remedied the Bullies' harassment or acceded to Plaintiffs' "remedial demands." *Sanches*, 647 F.3d at 167–68. But at the same time, RISD had a duty not to actively expose N.C. to the Bullies' harassment. *Watkins*, 308 F. App'x at 784.

Plaintiffs' FAC makes plain that RISD, through Principal Newman, took some remedial action in response to the Bullies. For instance, Newman called Plaintiff Chavez to discuss the Exposure Incident. Doc. 11, FAC ¶ 8. Yet the FAC goes on to allege that RISD officials—with actual knowledge of the Bullies' harassment of N.C., including the Exposure Incident—took N.C. and the Bullies to Terrace Park, stood by while the Bullies tackled her and held her down, and then did

nothing when students asked them to intervene. Doc. 11, FAC ¶¶ 11–15. Those actions, the FAC continues, exposed N.C. to the Assault in the Park. *Id.*

So taken as true, the FAC plausibly alleges that RISD officials' actions "caused [N.C.] to undergo harassment" from the Bullies at Terrace Park. *Watkins*, 308 F. App'x at 784 (internal quotation marks and citation omitted). For that reason, the Court finds that Plaintiffs have sufficiently plead that RISD acted with deliberate indifference.

5.    Summary

In sum, Plaintiffs needed to plausibly allege the following five elements to survive RISD's Motion to Dismiss:

> (1) [the district] had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was so severe and objectively offensive that it effectively barred the victim's access to an education opportunity or benefit, and (5) the district was deliberately indifferent to the harassment.

*Sanches*, 647 F.3d at 165. Plaintiffs adequately pled the first, second, and fifth elements, but not the third or fourth. As explained more fully above, "the sexual harassment alleged by [Plaintiffs] was not pervasive and the pervasive bullying alleged was not sexual harassment." *Carmichael*, 574 F. App'x at 289. The Court therefore concludes that Plaintiffs have failed to plead sufficient facts to state a plausible claim for relief under Title IX. Accordingly, the Court **GRANTS** RISD's Motion to Dismiss (Doc. 16).

# IV.

## CONCLUSION

To conclude, the Court has granted RISD's Motion with respect to Plaintiffs' entire suit against it. Plaintiffs' individual Title IX claims were dismissed without prejudice above, as was their request for punitive damages, because Plaintiffs have seemingly abandoned them.[11] And Plaintiffs' Title IX claim brought on behalf of N.C. is dismissed under Rule 12(b)(6) for pleading deficiencies.

Yet given the nature and severity of Plaintiffs' allegations, the Court concludes that it would be improper to render a final decision based on the sufficiency of Plaintiffs' pleadings rather than the merit of their claims. *See Great Plains Trust, Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). And while Plaintiffs have already amended their Complaint, "this is the first time the [C]ourt has addressed whether their pleadings sufficientl'y state a claim on which relief can be granted." *In re Am. Airlines, Inc. Privacy Litig.*, 370 F. Supp. 2d 552, 568 (N.D. Tex. 2005). For that reason, the Court **GRANTS** Plaintiffs leave to replead so as to cure the pleading deficiencies identified here. *See id.*

For the reasons stated above, the Court **GRANTS** RISD's Motion to Dismiss Plaintiff's First Amended Original Complaint (Doc. 16). The Court further **GRANTS** Plaintiffs leave to file a second amended complaint by **no later than September 29, 2017**. If Plaintiffs fail to amend their Complaint by September 29, 2017, then their claims against RISD will be **DISMISSED with prejudice**.

---

[11]*See supra* note 6.

SO ORDERED.

SIGNED: August 23, 2017.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE